BIO–ANALYTICAL SERVICES, INC., a corporation, Plaintiff-Appellant,

v.

The EDGEWATER HOSPITAL, INC., a corporation, and Dr. Maurice S. Mazel, Defendants-Appellees.

No. 75–1885.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1976.

Decided Oct. 28, 1977.

Rehearing and Rehearing In Banc Denied Jan. 24, 1978.

Jack B. Schmetterer, Chicago, Ill., for plaintiff-appellant.

Kevin M. Forde, Joseph Stein, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and WYZANSKI, Senior District Judge.*

FAIRCHILD, Chief Judge.

Bio-Analytical Services, Inc., a New York corporation, contracted with Edgewater Hospital, Inc., an Illinois corporation, to provide certain professional services for

---

* Senior District Judge Charles E. Wyzanski, Jr. of the District of Massachusetts is sitting by designation.

Edgewater. Edgewater owns and operates a hospital and the required services were in connection with the operation of Edgewater's Department of Pathology. Dr. Mark, an Illinois resident, is president of Bio-Analytical. He is not, in form, a party to the contract as an individual, although the contract makes it very clear that the contemplated services were actually to be performed by Dr. Mark. A "Personal Guarantee" was appended to the contract in which Mark guaranteed performance, but agreed that all compensation was to be paid to Bio-Analytical, with no separate payment to him. The contract also contained an arbitration clause, the applicability of which is in dispute.

On July 14, 1975, Edgewater filed a complaint in the Circuit Court of Cook County against Bio-Analytical and Dr. Mark, alleging that the agreement was terminated as a result of the material breach of Dr. Mark. The complaint requested damages and an accounting. Approximately eighteen minutes later, Bio-Analytical filed suit in federal district court against Edgewater and Dr. Maurice S. Mazel, its Medical Director, alleging a breach of the agreement. The complaint alleged jurisdiction by reason of diversity, and prayed for damages and injunctive relief against the withholding of property of Bio-Analytical and Dr. Mark and the interference with mail addressed to Bio-Analytical or Mark. In a separate count, Bio-Analytical's complaint prayed for an order compelling arbitration of all grievances pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

The district court found Dr. Mark, an Illinois resident, whose joinder as plaintiff would destroy diversity, to be an indispensable party so that dismissal was required. The district court further held that principles of comity precluded the exercise of federal jurisdiction because of the earlier suit in state court. This appeal followed. For the reasons hereinafter stated, we reverse.

## I. The Indispensable Party Claim

■ The determination of whether a party is indispensable is governed by Rule 19 of the Federal Rules of Civil Procedure. Rule 19 requires a two-step analysis. Rule 19(a) lists certain criteria to be used in ascertaining whether an absent person should be joined if feasible, but only if such joinder will not deprive the court of jurisdiction. If, as in the present case, joinder of an absent party would destroy diversity jurisdiction, 19(a) is inapplicable. *See, Bonnet v. Trustees of Schools of Township 41 North*, 563 F.2d 831 at 834 (7th Cir. 1977). The relevant inquiry for the court then becomes whether, under Rule 19(b), "in equity and good conscience the action shall proceed among the parties before it" or whether the absent party is indispensable requiring dismissal of the action. The rule lists four factors which must be weighed in making this judgment: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which such prejudice can be avoided by the shaping of relief; (3) the adequacy of the judgment in the absence of the person; and (4) the availability of an adequate remedy for the plaintiff if the action is dismissed from non-joinder. Generally, Rule 19 entails a pragmatic approach, focusing on realistic analysis of the facts of each case. *Provident Bank v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). In making this pragmatic determination, the district court "should state the facts and reasons upon which it acts." *Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977).

■ With this understanding of Rule 19, we turn to the facts of the present case. The district court held that Dr. Mark was an indispensable party:

> The complaint seeks relief of a personal nature for Dr. Mark. The court finds that Dr. Mark is a joint obligee with plaintiff Bio-Analytical, and Dr. Mark is an indispensable party to this action. *See e.g., Link v. Celebrezze*, 236 F.Supp. 599 (E.D.Pa.1964). His absence requires dismissal pursuant to Rule 19(b).

The court's statement does not demonstrate that the court considered the "equity

and good conscience" standard of Rule 19(b) nor the rule's four criteria. Once the "equity and good conscience" test is applied, we conclude that Dr. Mark is not an indispensable party.

Although Mark's guarantee may make him, in substance, a joint obligor, it is clear that he is not a joint obligee since Edgewater's obligations under the contract run solely to plaintiff. 3A J. Moore, Federal Practice, § 19.11 at 2361 (2d ed. 1975). The court's reference to relief sought in favor of Dr. Mark is doubtless based on the prayer in Count I for injunctive relief to protect Mark's individual, as well as Bio-Analytical's property. The property in question, however, seems to have been turned over pursuant to agreement reached at the hearing of the application for preliminary injunction, and the claim for injunctive relief thus mooted before decision of the district court.

Other than the now moot claim over property, Bio-Analytical also asserted in Count I a breach of the contract and sought damages. As it recognizes in its brief on appeal, Count I is a statement of the grievance on which it seeks arbitration in Count II. It obviously cannot be granted the relief sought on both counts. But whether we focus on the claim for damages or the claim for compelled arbitration, we do not find Dr. Mark indispensable under Rule 19(b).

If we assume a judgment for or against Bio-Analytical on Count I, or awarding or denying it arbitration on Count II, we are unable to perceive any prejudice to Dr. Mark or either of the parties on account of his absence as a party.[1] Moreover, a judgment will be entirely adequate in Dr. Mark's absence.[2] Edgewater will not be subjected to a significant risk of a later action by Dr. Mark since, under the contract, Mark receives compensation from Bio-Analytical rather than Edgewater.[3] We recognize that the pending state court action brought by Edgewater would provide an alternative forum thus arguably satisfying the fourth criteria of 19(b), the availability of an alternate remedy in the event of dismissal. We note, however, that the state court action was initiated by Edgewater and, in any event, "we do not view the availability of an alternate remedy, standing alone, as a sufficient reason for deciding that the action should not proceed among the parties before the court." *Bonnet, supra,* at 833. We realize that Edgewater would reasonably desire to have Mark as well as Bio-Analytical a party in connection with Edgewater's claim that Mark and Bio-Analytical performed improperly, but this does not make Mark an indispensable plaintiff.

## II. *The Comity Claim*

The district court also held that comity precluded it from exercising jurisdiction because of the prior state court action commenced by Edgewater. While the district court may have been correct in its application of the law at the time of its opinion, subsequent developments have undermined its rationale.

In *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), decided after the district court's decision, the Supreme Court

---

1. We recognize that Dr. Mark appears to be the sole officer of Bio-Analytical. However, the legal sufficiency of the corporate entity has not been challenged.

2. *Link v. Celebrezze,* 236 F.Supp. 599 (E.D.Pa. 1964), cited by the district court for the proposition that Dr. Mark is an indispensable party, is plainly distinguishable. In *Link,* plaintiff, a discharged government employee, brought an action against the Secretary of HEW to seek reinstatement. Plaintiff, however, failed to join members of the Civil Service Commission as defendants. Since the Civil Service Commis-

sion had affirmed the dismissal of plaintiff, the court held that its members were indispensable parties with the named defendant neither able nor authorized to grant the relief sought.

In the present case, by contrast, a court could readily order arbitration in an action by Bio-Analytical against Edgewater. Indeed, Dr. Mark has no right to demand arbitration under the contract.

3. The only risk of repetitious suits faced by Edgewater results from its own suit in state court. Moreover, the only danger is inconsistent judgments on the arbitration issue.

articulated the controlling legal standard to justify dismissal of an action in federal court where jurisdiction is properly invoked because of a concurrent proceeding in state court. When parallel actions exist in state and federal courts, the general rule is that the state court action is no bar to proceedings concerning the same subject matter in federal court. *Id.* at 817, 96 S.Ct. 1236. The Court recognized, however, that there are circumstances which could justify a federal court from declining to exercise jurisdiction due to a pending state suit despite "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* However, the circumstances permitting a federal court to decline to exercise jurisdiction when there is a concurrent state action "are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818, 96 S.Ct. at 1246. In determining whether a parallel action in state court is grounds for declining to exercise properly invoked federal jurisdiction,

> [N]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. [Citation omitted.] Only the clearest of justifications will warrant dismissal.

424 U.S. at 818–19, 96 S.Ct. at 1247.

Factors which the Court indicated might justify a dismissal included: (1) the assumption of jurisdiction over a *res* by the state court; (2) the desirability of avoiding piecemeal litigation; (3) the inconvenience of the federal forum; and (4) the order of initiation of the two actions.[4]

This court has recently applied *Colorado River* in *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,* 560 F.2d 792 (7th Cir. 1977). In *Calvert,* we found no "exceptional circumstances," slip opinion at 7, to justify a stay of an action in federal court brought under the federal securities laws despite the existence of a pending state action involving substantially identical issues. We noted that the federal forum was not inconvenient for any of the parties, the state and federal courts acquired concurrent jurisdiction on the same day, and the exclusive jurisdiction of the federal courts of federal securities matters all weighed against deference to state proceedings.

■ *Colorado River* and *Calvert* may not inevitably require a federal district court to exercise jurisdiction founded solely on diversity where the federal action was started later than a state court action embracing the same issues, but not removable. Here, however, Bio-Analytical relies on the Federal Arbitration Act. Although it is not clear that state courts are not equally bound to enforce agreements to arbitrate to which the Act is applicable, we do know in the present circumstances that the state court has declined to do so. Under these circumstances, we cannot permit a federal district court to defer to a state court on comity grounds in view of the importance of the Federal Arbitration Act.[5] *See Galt v. Libbey-Owens-Ford,* 376 F.2d 711 (7th Cir. 1967).

■ *Toucey v. New York Life Ins. Co.,* 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100

---

4. In *Colorado River,* the Court found the exceptional circumstances necessary to justify deference to a state court proceeding. The United States had brought a suit in federal court asserting certain water rights claims. One of the defendants then attempted to make the United States a party to a state court action to facilitate adjudication of all the Government's claims. In affirming the dismissal of the federal suit, the Court primarily relied on the McCarran Amendment, 43 U.S.C. § 666, which provides consent for joining the United States in a state suit for adjudication of water rights. The amendment demonstrated a federal policy

of avoiding piecemeal litigation and disrupting of a state's system of allocation and adjudication of water rights. Moreover, the state proceeding was in no respect inadequate to resolve the federal claims. 424 U.S. at 820, 96 S.Ct. 1236.

5. Appellants contend that the Federal Arbitration Act denied federal courts the discretionary power to decline to exercise jurisdiction because of a pending state proceeding. In light of our disposition of this case, we need not reach this question.

(1941), relied upon by the district court, is inapposite. *Toucey* established that a federal court had power to enjoin proceedings in a state court which interfered with the *res* over which it had prior jurisdiction, thereby creating an implied exception to the then existing anti-injunction statute. When the statute was amended in 1948, this power of federal courts was codified by the second exception in 28 U.S.C. § 2283 which permits a federal court to enjoin a state proceeding "where necessary in aid of its jurisdiction." *See,* 1A Moore's Federal Practice, § 0.218[2]–[3] (2d ed. 1975). *Toucey* clearly provides no support for the district court's dismissal of a federal suit because of a parallel state proceeding in an *in personam* action.[6]

III. *Other Contentions Raised by the Parties*

The parties raise various other issues such as whether the contract provided for mandatory arbitration, whether substantial interstate activity was involved as alleged and as required by the Federal Arbitration Act, and whether the federal suit was precluded by *res judicata* as a result of the state court's denial of arbitration.[7] None of these issues is relevant to the existence of federal jurisdiction and none was considered by the lower court. The question whether the transaction involves "commerce" may well require an evidentiary hearing. Having concluded that the district court should exercise jurisdiction, these other issues are left to further proceedings in that court.

The judgment appealed from is reversed and the cause remanded for further proceedings.

6. Edgewater here asserts that the action of the district court may have rested on Section 48(1)(c) of the Illinois Practice Act which provides that "another action pending between the same parties for the same cause" is grounds for dismissal. Illinois Revised Statute, Chapter 110 § 48(1)(c) (Smith Hurd, 1956). Since Edgewater did not raise this provision by motion, any defense based on it was waived. *Seaboard Finance Co. v. Davis,* 276 F.Supp. 507, 518 (N.D.Ill.1967). We intimate no views on the applicability of this section if there had been no waiver.

7. The Edgewater defendants moved to dismiss this appeal, asserting that the state court's declination to order arbitration is *res judicata.* Bio-Analytical disputes this conclusion. In any event, this is a matter going to the merits of the present action, and does not demonstrate that the appeal is frivolous, or improperly before us. The motion to dismiss the appeal is denied.